MiEMORANDUM
 

 OBERDORFER, District Judge.
 

 In 1998, two complaints were filed, each alleging,
 
 inter alia,
 
 that inhabitants of the District of Columbia are being unconstitutionally deprived of their right to vote for voting representation in the House of Representatives and the Senate. Complaint,
 
 Adams v. Clinton,
 
 Civil No. 98-1665 (D.D.C.filed June 30, 1998)
 
 [1]
 
 ; Amended Complaint,
 
 Alexander v. Daley,
 
 Civil No.98-2187 (D.D.C. filed Oct. 20, 1998)
 
 [2]
 
 . As both complaints “challengfedj the constitutionality of the apportionment of congressional districts,” 28 U.S.C. § 2284(a), the cases were consolidated, and a three-judge court was convened.
 
 Adams v. Clinton,
 
 26 F.Supp.2d 156 (D.D.C.1998). The three-judge court has addressed, in an opinion filed today, the apportionment issue, finding standing on account of the claim against the Secretary of Commerce.
 
 Adams v. Clinton,
 
 Civil Nos. 98-1665, 98-2187, slip op. Part III (D.D.C. Mar 20, 2000) (three-judge court) (Oberdorfer, J., dissenting). That court held that inhabitants of the District are not being unconstitutionally deprived of their right to vote for voting representation in the House of Representatives and, therefore, the District is not entitled to be apportioned seats in the House commensurate with its population.
 
 Id.
 
 Part IV. It declined jurisdiction, however, over the plaintiffs’ claims seeking representation in the Senate and challenging the existence of the Control Board, as those claims do not concern apportionment.
 
 Id.
 
 Part II. Those claims have been remanded to this single-judge court for resolution.
 
 Id.
 
 For the reasons explained herein, those claims will be dismissed.
 

 I
 

 The Senate
 

 A
 

 A detailed summary of the facts is contained in the majority and dissenting opinions filed in the three-judge court portion of these cases. Only the critical facts with respect to the Senate are summarized here. When the Constitution was adopted, Article I, section 3, provided that members of the United States Senate would be elected by State legislatures, not by the people themselves, and that each State would elect two Senators. U.S. Const, art. I, § 3.
 
 [3]
 
 It was not until 1913, when the
 
 *30
 
 Seventeenth Amendment was ratified, that Senators were elected directly by the people.
 
 Id.
 
 amend. XVII.
 
 [4]
 
 As a result, when the United States assumed exclusive jurisdiction over the District in 1801, inhabitants had been voting for representation in the House of Representatives, but had never voted for representation in the Senate.
 

 As the Constitution establishes that each State is entitled to two Senators, there is no need for the apportionment of seats that takes place prior to the election of members of the House of Representatives. Each State takes whatever steps it deems necessary to hold an election for Senator. Once a Senator is elected, the State sends a certificate to the Senate. The Secretary provides a model certificate “to the governor and secretary of each State wherein an election is about to take place or an appointment is to be made.” Standing Rules of the Senate, Rule II.3,
 
 reprinted in
 
 Senate Manual, S. Doc. No. 104-1 (1995). The Secretary is also responsible for keeping a record of the certificates.
 
 Id.,
 
 Rule II.2. At the beginning of each Congress, the President of the Senate lays the certificates of new Senators before the Senate for recognition. If there is no objection, the President then administers the oath of Office to these Senators. If there are issues about the qualifications or election of a particular Senator, the Senate Committee on Rules and Administration resolves them, subject to the ultimate authority of the Senate as a whole.
 
 Id.,
 
 Rule XXV.l(n)(l)(4). Once the new Senators have taken the oath of Office, the Secretary pays their salaries, 2 U.S.C. § 60c-l, and the Sergeant at Arms and Doorkeeper admits them to the floor of the Senate while it is in session.
 
 [5]
 
 Standing Rules of the Senate, Rule II.3. The District of Columbia Board of Elections has never held an- election for Senator, has no present plans to do so, and, indeed, lacks the authority to do so under District law.
 

 B
 

 With respect to the Senate, the plaintiffs allege that denial of their right to vote for voting representation in 'that body deprives District inhabitants of their rights to equal protection, to the privileges of national citizenship, and to substantive and procedural due process. They contend that the Seventeenth Amendment does not pose a structural barrier to the relief they seek because the inhabitants of the District were at one time “people of the several States,” for whom the Constitution “secured ... .all the rights and privileges it conferred on other Americans, including the right to representation in the Congress.” Memorandum in Support of Motion of Plaintiffs
 
 Alexander et al.
 
 for Summary Judgment at 45 (filed Nov. 11, 1998). The plaintiffs relied on similar arguments to support their claim that they were being unconstitutionally deprived of their right to vote for voting representation in the House. The majority of the three-judge court, which today decided the apportionment portion of these cases, rejected that argument on' the merits. Thus, although the majority opinion did not directly address the merits of the plaintiffs’ claim with respect to the Senate, its reasoning applied to the Senate claim would lead to the same conclusion. It is also noteworthy that the three-judge court divided over this issue: whether the undisputed fact that inhabitants of the area that became
 
 *31
 
 the District voted for voting representation in the House until 1801 necessarily leads to the conclusion that they thereby secured that right for them and their political posterity. However, until adoption of the 17th Amendment in 1913, neither they, nor anyone else in the United States, voted directly for Senators.
 

 In their opposition to the plaintiffs’ motion for summary judgment, the defendants conspicuously failed to address the merits of their claims, contending that these cases should be dismissed for lack of standing and because the Speech or Debate Clause precludes this action. Memorandum of Points and Authorities in Support of Motion of Senate Defendants to Dismiss and in Opposition to Motion of Plaintiffs for Summary Judgment in
 
 Alexander, et al. v. Daley, et al.
 
 at 1 (filed Dec. 18, 1998). The Supreme Court has made clear that courts must resolve questions of standing before any consideration of the merits.
 
 Steel Co. v. Citizens for a Better Environment,
 
 523 U.S. 83, 93-102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).
 

 Article III of the Constitution requires the following, at a minimum, to establish standing:
 

 First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 

 Lujan v. Defenders of Wildlife,
 
 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations, footnotes and quotations omitted). Plaintiff bears the burden of establishing these elements.
 
 Id.
 
 at 561, 112 S.Ct. 2130.
 

 The Secretary
 
 oí'
 
 the Senate and the Sergeant at Arms and Doorkeeper of the Senate assert that the plaintiffs cannot satisfy either the causation or redressability prongs of the standing inquiry. With respect to causation, the Senate defendants argue that the plaintiffs’ injury cannot fairly be traced to the defendants’ actions because neither the Secretary nor the Sergeant at Arms has taken, or threatened to take, any action that has, or would, interfere with the plaintiffs’ exercise of their claimed right to vote for and elect a Senator. Senate Motion to Dismiss at 6. In particular, the defendants point to the following facts: (1) the Sergeant at Arms has never refused to admit to the floor of the Senate any person purporting to represent the District; (2) the Secretary has never refused to record the election of a Senator elected by the inhabitants of the District; (3) the Secretary has never refused to pay the salary of a Senator elected by the inhabitants of the District; (4) although the Secretary has never sent the mayor of the District a model certificate for recording the election of a Senator, if the District were to elect a Senator, it could send a certificate to the Senate that did not follow the model form; (5) the Senate, not the Sergeant at Arms or the Secretary, decides whether to recognize an individual as a duly appointed or elected Member of the Senate, who is thereby,
 
 inter alia,
 
 entitled to be admitted to the floor of the Senate and paid; (6) neither the Secretary nor the Sergeant at Arms has taken any action, nor could they, that prevents District residents from holding an election for Senator; (7) the District of Columbia Board of Elections has never conducted, or stated an intent to conduct, an election for a Senator; and (8) the laws of the District of Columbia do not authorize the District of Columbia Board of Elections to conduct such an election. All of these facts, the defendants argue, demonstrate that the causal link between the defendants’ conduct and the plaintiffs’ inju
 
 *32
 
 ry is too attenuated to satisfy the causation requirement of Article III standing.
 

 The plaintiffs argue that the actions of the Senate defendants satisfy the causation element of standing because they “enforce the statutes, rules and determinations that prevent District citizens from being represented in the ... Senate.”
 
 Alexander
 
 Plaintiffs Consolidated Memorandum in Opposition to Defendants’ Motions To Dismiss, and Reply in Support of Plaintiffs’ Motion for Summary Judgment at 32 (filed Feb. 8, 1999). Plaintiffs also argue that the fact that the Senate officers have never refused to admit to the floor, record the certificate for, or pay a person purporting to be a Senator elected by the District is not determinative because “defendants’ undisputed intent to enforce the exclusion of District representatives from Congress satisfies the traceability requirement.”
 
 Id.
 
 at 33. Plaintiffs assert that holding an election for Senator at this time would be futile, because it is clear that the Senate, and therefore the Senate officers, would not recognize anyone elected by the District as a duly elected Senator.
 
 Id.
 
 at 36.
 

 The causation question presented by these cases is novel and difficult. The closest the Supreme Court has come to addressing this question is in its decision in
 
 Franklin v. Massachusetts,
 
 505 U.S. 788, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992).
 
 Franklin
 
 is discussed extensively in the majority opinion filed in the three-judge court portion of this case, a part of the opinion to which I concurred. In brief, the
 
 Franklin
 
 Court addressed a challenge to the apportionment of overseas voters by finding that there was standing to sue the Secretary of Commerce.
 
 Id.
 
 at 801-03, 112 S.Ct. 2767. Thus, it was unnecessary for the Court to reach the question of whether there was standing to bring such a claim against officers of the House.
 
 Id.
 
 at 803, 112 S.Ct. 2767. The three-judge court majority opinion in these cases takes the same approach, thus leaving open the question of whether the plaintiffs here could have maintained their claims against the House officers if the Secretary of Commerce had not been a defendant.
 

 Nor is this case controlled by the Supreme Court’s decision in
 
 Powell v. McCormack,
 
 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). In
 
 Powell,
 
 the Court found that the plaintiff, a duly elected Representative from the State of New York whom the House of Representatives refused to seat, had standing to sue the House officers who had refused to seat him and to pay his salary. Id. at 487, 89 S.Ct. 1944.
 
 Powell
 
 is distinguishable from the present case for several reasons. The plaintiff in
 
 Powell
 
 had actually been reelected by the people of New York as a Representative. The injury complained of in
 
 Powell
 
 was the actual refusal to seat or pay him as a Representative. Here, the plaintiffs are residents of the District who would be eligible to vote in an election, if there were one, for a Senator to represent the District. The injury complained of is the deprivation of their right to vote for a member of the Senate. The causation inquiry, therefore, is not comparable.
 

 It bears repeating that it is the plaintiffs who bear the burden of establishing the elements of standing.
 
 Lujan,
 
 504 U.S. at 561, 112 S.Ct. 2130. Moreover, the sensitive constitutional issues which lurk in the merits of plaintiffs’ claim bring to mind Justice Brandéis’ caution that a court should not “decide questions of a constitutional nature unless absolutely necessary.”
 
 Ashwander v. Tennessee Valley Authority,
 
 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Finally, the Supreme Court recently admonished that the judiciary must be most cautious in deciding whether “action taken by one of the other two branches of the Federal Government was unconstitutional.”
 
 See Raines v. Byrd,
 
 521 U.S. 811, 117 S.Ct. 2312, 2317-18, 138 L.Ed.2d 849 (1997). With these considerations in mind, I am not persuaded that the plaintiffs have established the necessary causal link between the defendants’ actions and their
 
 *33
 
 injury. The plaintiffs’ alleged injury is the denial of their right to vote for a member of the Senate. If the plaintiffs were to prevail on the merits, their injury simply would not be fairly traceable to the actions of the Senate defendants. Nothing that the Secretary of the Senate or the Sergeant of Arms and Doorkeeper of the Senate has done, or intends to do, would have substantially contributed to their injury. Before either of the Senate defendants would be called upon to take any of the actions the plaintiffs seek to enjoin, a law would have to be passed authorizing the Board of Elections to conduct an election for Senator, the Board of Elections would have to hold such an election, and the Senate would have to refuse to recognize the individual identified by the District as a Senator
 
 [6]
 
 It is by no means certain that all, if any, of these events would ever take place.
 
 [7]
 
 Plaintiffs’ suggestion that an election today would be “futile” because the Senate would surely refuse to seat any Senator elected by the District does not change the fact that the plaintiffs’ present injury is not clearly traceable to the defendants.
 

 Accordingly, the motion of the Senate officers to dismiss for lack of standing will be granted. Having reached that conclusion, there is no need to address the defendants’ argument that the plaintiffs also fail to establish the redressability element of standing.
 

 II
 

 The Control Board
 

 The
 
 Adams
 
 complaint names as a defendant the District of Columbia Financial Responsibility and Management Assistance Authority (the Control Board). It alleges that the existence of the Control Board deprives them of their constitutional right to equal protection of the laws and their right to a republican form of government. The Control Board has moved to dismiss on the ground that the
 
 Adams
 
 plaintiffs lack standing to bring these claims and for failure to state a claim upon which relief can be granted
 

 A
 

 In 1995, Congress enacted the District of Columbia Financial Responsibility and Management Assistance Act of 1995, Pub.L. No. 104-8, 109 Stat. 97 (1995) (codified as amended D.C.Code Ann. § 47-391.1 — 47-893 (1996)). The Act created the District of Columbia Financial Responsibility and Management Assistance Authority (the Control Board) as “an entity within the government of the District of Columbia” and “not established as a department, agency, establishment or instrumentality of the United States Government.”
 
 Id.
 
 The Act,
 
 inter alia,
 
 authorizes the Control Board to review and approve the financial plan and budget for the fiscal year, as submitted by the Mayor and enacted by the City Council, to review Council acts, to review certain contracts and leases, to submit recommendations to the Mayor, the Council, the President and Congress on actions that the District government should take to ensure compliance with the financial plan and budget, to issue bonds upon request by the Mayor, and to lodge or grant a security interest to individuals or entities purchasing bonds, notes or other obligations.
 
 Id.
 
 Nothing in the
 
 *34
 
 Act gives the Control Board any authority over or responsibilities pertaining to elections in the District of Columbia.
 

 B
 

 The essence of the
 
 Adams
 
 plaintiffs’ equal protection claim is that the existence of the Control Board violates their right to equal protection of the laws by “preventing [them] from electing representatives to Congress having, full powers and rights under the Constitution [and] preventing them from enjoying the benefits of citizenship in a state.” Complaint H 71. The Control Board asserts that the
 
 Adams
 
 plaintiffs cannot satisfy any of the three necessary components of standing— injury-in-fact, causation or redressability. Looking first at redressability, it is not apparent how the abolition of the Control Board would redress the
 
 Adams
 
 plaintiffs’ injury. It certainly would not entitle the inhabitants of the District to elect representatives to Congress or permit them to enjoy the benefits of citizenship in a state. As the
 
 Adams
 
 plaintiffs cannot establish that their equal protection injury would be remedied by abolition of the Control Board, it is not necessary to address whether the other elements of standing, injury-in-fact and causation, are present. Nor is it necessary to address the Control Board’s failure to state a claim argument. Accordingly, the
 
 Adams
 
 plaintiffs’ equal protection claim against the Control Board will be dismissed for lack of standing.
 

 The
 
 Adams
 
 plaintiffs’ other claim is that the existence of the Control Board violates their right to a republican form of government under the Guarantee Clause of the Constitution. U.S. Const, art IV, § 4. Again, the Control Board argues that
 
 Adams
 
 plaintiffs lack standing to bring this claim. Here, however, the
 
 Adams
 
 plaintiffs have clearly alleged a concrete injury (deprivation of their right to a republican form of local government) that is traceable to the existence of the Control Board, and that would be redressed, at least in part, by its elimination.
 

 Turning to the merits, Article IV, § 4, provides that “[t]he United States shall guarantee to every State in this Union a Republican Form of Government .... ” U.S. Const, art. IV, § 4. Historically, such claims have usually been treated as nonjusticiable political questions.
 
 New York v. United States,
 
 505 U.S. 144, 184, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992);
 
 see, e.g., Hobson v. Tobriner,
 
 255 F.Supp. 295, 299 (D.D.C.1966) (declining to address republican guarantee question). However, even assuming that this claim is justiciable,
 
 [8]
 
 the
 
 Adams
 
 plaintiffs have failed to state a claim upon which relief can be granted. The District Clause of the Constitution gives Congress the power of “exclusive legislation” over the District. Thus, Congress is clearly the constitutionally-designated ultimate “legislature” for the District. As the court observed in
 
 Hobson,
 
 “it is apparent that Congress has plenary power over the District of Columbia and has passed legislation from time to time setting up various forms of government.” 255 F.Supp. at 299. Any claim that the inhabitants of the District are being denied their constitutionally guaranteed republican form of government must be directed toward their lack of representation in Congress — not to their lack of representation in any subsidiary body that Congress chooses to create and empower with authority over the District, subject always to Congress’ ultimate power of “exclusive legislation.”
 
 Cf. Shook v. District of Columbia Financial Responsibility and Management Assistance Authority,
 
 132 F.3d 775, 781 (1998) (noting that “[appellants concede, however — as they must— that their right to vote for a Board of Education, granted by Congress, can be taken away by Congress”). Similar challenges to such bodies on the ground that the inhabitants of the District were not
 
 *35
 
 given a voice in their selection have been dismissed for failing to present a “substantial” federal question.
 
 See, e.g., Carliner v. Commissioner,
 
 412 F.2d 1090, 1091 (D.C.Cir.1969) (holding that challenge to appointed mayor and city council on ground that “citizens of the District have not been given the opportunity by popular vote to elect persons to th[ose] positions” was “insubstantial”);
 
 Hobson,
 
 255 F.Supp. at 299.
 
 [9]
 
 It is one thing to say that the apportionment clause requires representation in the House of Representatives for District inhabitants, and to that extent the benefits of a republican form of government.
 
 See Adams v. Clinton,
 
 90 F.Supp.2d 35 (D.D.C. 2000) (three-judge court) (Oberdorfer, J., dissenting). It is quite another thing to say that, despite Congress’ power of “exclusive legislation,” Congress cannot create another body with authority over the inhabitants of the District always subject to its power of exclusive legislation. Accordingly, the
 
 Adams
 
 plaintiffs’ guarantee clause claim against the Control Board will be dismissed.
 

 An accompanying Order implements the decisions announced herein.
 

 ORDER
 

 For the reasons stated in an accompanying Memorandum, it is this 20th day of March, 2000, hereby
 

 ORDERED: that the Motion to Dismiss of the District of Columbia Financial Responsibility and Management Assistance Authority is GRANTED; and it is further
 

 ORDERED: that the Motion of Senate Defendants to Dismiss is GRANTED; and it is further
 

 ORDERED: that the
 
 Adams
 
 Plaintiffs Motion for Summary Judgment on all claims except those pertaining to apportionment and addressed by the three-judge court is DENIED; and it is further
 

 ORDERED: that the
 
 Alexander
 
 Plaintiffs’ Motion for Summary Judgment on all claims except those pertaining to apportionment and addressed by the three-judge court is DENIED.
 

 [1]
 

 . In
 
 Adams v. Clinton,
 
 the plaintiffs, District residents, sued the President of the United States, the Clerk of the House of Representatives, the Sergeant-at-Arms of the House of Representatives, and the District of Columbia Financial Responsibility and Management Assistance Authority (the "Control Board").
 

 [2]
 

 . In
 
 Alexander v. Daley,
 
 the plaintiffs, District residents and the District of Columbia itself, sued the United States, the Secretary of Commerce, the Clerk of the House of Representatives, the Sergeant-at-Arms of the House of Representatives, the Chief Administrative Officer of the House of Representatives, the Secretary of the Senate and the Senate Sergeant-at-Arms and Doorkeeper.
 

 [3]
 

 . In its original form, the Constitution provided: "The Senate of the United States shall be composed of two Senators from each State, chosen by the Legislature thereof, for six Years; and each Senator shall have one Vote.” U.S. Const, art. I, § 3.
 

 [4]
 

 . The Seventeenth Amendment provides: "The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote.” U.S. Const, amend XVII.
 

 [5]
 

 . Senate rules provide that: "Other than the Vice President and Senators, no person shall be admitted to the floor of the Senate while in session.” Standing Rules of the Senate, Rule XXIII. However, Senate staff and certain dignitaries, including the Mayor of the District, are also admitted, although they are not eligible to vote.
 
 Id..; see also
 
 Rules for Regulation of the Senate Wing of the U.S. Capitol, Rule I,
 
 reprinted in
 
 Senate Manual, S. Doc. No. 104-1.
 

 [6]
 

 . At the argument on pending motions, counsel for the Senate defendants represented that if the District of Columbia certified a senator and the Senate decided the certification was in order, that Senate defendants would “perform their functions on behalf of those individuals.” Transcript of Apr. 19, 1999, at 81-83.
 

 [7]
 

 . In conttast, the Secretary of Commerce has excluded the inhabitants of the District from his apportionment of seats in the House of Representatives in the past and intends to continue the practice in the future. This concrete action was the basis for the three-judge court's conclusion that the plaintiffs had standing to bring against the Secretary their claim that they are being deprived of their constitutional right to vote for voting representation in the House.
 

 [8]
 

 . The Supreme Court suggested in
 
 New York v. United States
 
 that perhaps not all Guarantee clause claims are nonjusticiable.
 
 New York,
 
 505 U.S. at 185, 112 S.Ct. 2408.
 

 [9]
 

 . Unlike a three-judge court whose decisions are reviewable only by the Supreme Court, the issues addressed here are unquestionably controlled by Circuit authority.