# United States Court of Appeals
## For the First Circuit

No. 15-1336

GREGORIO IGARTÚA, et al.,

Plaintiffs, Appellants,

v.

DONALD J. TRUMP, President of the United States of America;
WILBUR L. ROSS, JR., Secretary of Commerce;
KAREN L. HAAS, Clerk of the U.S. House of Representatives,

Defendants, Appellees. [*]

Before
Howard, Chief Judge,
Torruella, Lynch, Lipez, Thompson, Kayatta, and Barron, Circuit Judges.

**ORDER OF COURT**
Entered: August 9, 2017

Pursuant to First Circuit Internal Operating Procedure X(C), Appellant Gregorio Igartua's petition for rehearing en banc has also been treated as a petition for rehearing before the original panel. The petition for rehearing having been denied by the panel of judges who decided the case, and the petition for rehearing en banc having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the petition for rehearing and petition for rehearing en banc be denied.

**KAYATTA, Circuit Judge, with whom HOWARD, Chief Judge, LYNCH, Circuit Judge, and BARRON, Circuit Judge join, statement on denial of rehearing en banc**. The prolonged inability of our fellow citizens to vote for certain federal officials is certainly a matter of legitimate concern. The only issue now before us, though, is whether our court should convene an en banc hearing to consider whether the plaintiffs' claims in this action must be heard in the first instance by a three-judge court under 28 U.S.C. § 2284(a). Those urging that we do so premise their argument upon a suggestion that our controlling precedent errs in failing to require the appointment of a three-judge court. For the following reasons, we disagree.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), President Donald J. Trump, is substituted for former President Barack Obama, and Secretary Wilbur L. Ross, Jr., is substituted for former Secretary Penny Pritzker, as appellees.

To warrant the assignment of this lawsuit to a three-judge court, we would need to find that the complaint satisfies two criteria: (1) it commences "an action challenging the constitutionality of the apportionment of congressional districts," 28 U.S.C. § 2284(a); and (2) it presents "a substantial federal question," so that the complaint is "justiciable in the federal courts." Shapiro v. McManus, 136 S. Ct. 450, 455 (2015) (quoting Gonzalez v. Automatic Emps. Credit Union, 419 U.S. 90, 100 (1974)).

Plaintiffs' only claim that meets the first criterion is that the United States Constitution makes it unconstitutional to apportion congressional districts as the Constitution itself says to apportion them. Notably, none of our colleagues even tries to explain how the Constitution itself might conceivably prohibit that which it directs "shall be" done. To the contrary, as Judge Torruella observed, "the text of Section 2, Article I does not grant to citizens of Puerto Rico the right to vote for members of the House of Representatives." Igartúa v. United States (Igartúa IV), 626 F.3d 592, 616 (1st Cir. 2010) (Torruella, J., concurring in part and dissenting in part) (emphasis in original). Any argument to the contrary, certainly post-Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C.), aff'd, 531 U.S. 941 (2000), is therefore "wholly insubstantial." Vazza v. Campbell, 520 F.2d 848, 850 (1st Cir. 1975).

Our colleagues do posit an alternative theory that: (1) the Constitution might permit Congress to make such an apportionment; and (2) the International Covenant on Civil and Political Rights ("ICCPR"), a treaty approved by the Senate, requires the apportionment of congressional representation to Puerto Rico. Such a claim, however, cannot trigger the need to assign the case to a three-judge court under § 2284(a) because it is not a challenge to the constitutionality of the current apportionment. Rather, it is a claim that the current apportionment, implemented through an act of Congress, see 2 U.S.C. §§ 2a–2c, is not in compliance with what is, in effect, another law approved by Congress. See Medellín v. Texas, 552 U.S. 491, 505 (2008) (a treaty is "equivalent to an act of the legislature" (citation omitted)). To say that "plaintiffs' treaty-based claim is a constitutional claim that defendants have violated the Supremacy Clause of the Constitution," Igartúa v. Obama (Igartúa V), 842 F.3d 149, 156 (1st Cir. 2016), cannot be correct because the Supremacy Clause on its face has nothing whatsoever to do with adjudicating an asserted clash between two actions of the United States.[1] And without the misnomer created by calling a treaty-based claim a "constitutional claim," the predicate for convening a three-judge court to hear such a claim disappears.

**TORRUELLA, Circuit Judge, dissenting from the denial of rehearing en banc.** Although I fully join my dissenting colleagues' elegant and on point statements, I write separately because their expressions regarding the majority's denial of en banc review of the panel decision fall substantially short of what I consider to be an unwarranted and unjustifiable action that clearly runs contrary to the law.

---

[1] See U.S. Const. art VI ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

At the heart of this controversy lies the total national disenfranchisement[2] and lack of national political clout of the community of 3.5 million United States citizens who reside in Puerto Rico, a condition which has lasted for the 119 years of U.S. sovereignty over the people who inhabit this territory, and even more significantly, throughout the 100 years since they were granted citizenship in 1917.[3] This situation has, if anything deteriorated in recent times.[4] This regrettable condition calls upon this court to heed the apparently forgotten advice of the Supreme Court in United States v. Carolene Products Co., 304 U.S 144, 152 n.4 (1938), to the effect that "prejudice against discrete and insular minorities may be a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry." Beyond the expressions of my dissenting colleagues, I am saddened, not only by this court's negation of the advice of Carolene Products, but, in opposition to that tenet, as is clearly demonstrated in the denial of the present en banc proceeding, by its consistently shallow grounds in doing so.

In substance, Appellants claim that they are deprived of their constitutional right to vote for representatives in the United States House of Representatives by reason of Congress having failed to apportion congressional districts for Puerto Rico, and demand the convening of a three-judge district court pursuant to 28 U.S.C. § 2284. The Federal Rules of Appellate Procedure provide procedural relief designed to correct serious constitutional injuries of the type claimed by the insular minorities in question in this case.

Rule 35(a)(2) of the Federal Rules of Appellate Procedure establishes that an en banc court may be convened when "the proceeding involves a question of exceptional importance." Given our record of past en banc votes, it is difficult to discern in this circuit a principled rule as to what is considered a "question of exceptional importance." Judging from the votes in the present case, as well as in past cases, one cannot even accurately describe the existence of a double, triple, or even quadruple standard of what this court considers a "question of exceptional importance." The closest we can come to in predicting the granting or denial of such a procedure in this Circuit is that it appears to depend on the "eye of the beholder," see Igartúa v. United States, 654 F.3d 99, 105 (1st Cir. 2011) (Torruella, J., dissenting), or stated with equal accuracy, that "we know it when we see it." Just a few examples will suffice to illustrate the nomadic nature of our non-"exceptional importance" rule. In Igartúa-de la Rosa v. United States, 417 F.3d 145, 158 (1st Cir. 2005) (Torruella, J., dissenting), this court motu proprio convened an en banc court and proceeded to

---

[2] In 2012, 61% of the People of Puerto Rico voted in favor of joining the Union as a state, a result which was ignored by Congress. See OPCIONES NO TERRITORIALES, Elecciones Generales 2012 y Consulta sobre el Estatus Político de Puerto Rico (Nov. 16, 2012, 9:59 PM), http://64.185.222.182/REYDI_NocheDelEvento12/index.html#es/default/OPCIONES_NO_TER RITORIALES_ISLA.xml. On June 11, 2017, a referendum reaffirmed this outcome with a 97% vote in favor of statehood. See CONSULTA DE ESTATUS, Plebiscito para la Descolonización Inmediata de Puerto Rico (June 14, 2017, 3:43 PM), http://resultados2017.ceepur.org/Noche_del_Evento_78/index.html#es/default/CONSULTA_DE SCOLONIZACION_Resumen.xml. Unfortunately, given the *Realpolitik* of the present situation in the National center of power, these results are most likely to be "dead on arrival."

[3] Jones-Shafroth Act, Pub. L. No. 64-368, 39 Stat. 951 (1917).

[4] See Puerto Rico v. Sánchez Valle, 136 S. Ct. 1863 (2016); Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241.

suppressed the original panel after the panel had held a rehearing and even before it could issue its opinion.[5] In S.E.C. v. Tambone, we granted en banc to decide what it means "[t]o make any untrue statement of a material fact . . . in connection with the purchase or sale of any security." 597 F.3d 436, 438 (1st Cir. 2010) (en banc) (alterations in original). In United States v. Textron, we granted en banc to figure out "whether the attorney work product doctrine shields from an IRS summons 'tax accrual work papers' prepared by lawyers and others in a [corporation]'s [t]ax [d]epartment to support [the corporation]'s calculation of tax reserves for its audited corporate financial statements." 577 F.3d 21, 22 (1st Cir. 2009) (en banc); see also Kolbe v. BAC Home Loans Servicing, LP, 738 F.3d 432, 474 (1st Cir. 2013) (Torruella, J. dissenting) (compiling cases demonstrating the First Circuit's ambivalence when granting and denying en banc review).

In contrast, the present request for en banc review raises a question of "exceptional importance" because:

(1) The panel that decided this case affirmed the denial by the district court of the convening of a three-judge district court because it found itself bound by "the brief, yet controlling, footnote in [Igartúa v. United States, 626 F.3d 592, 598 n.6 (1st Cir. 2010) ("Igartúa IV")] rejecting the call for a three-judge court."[6] Igartúa v. Obama, 842 F.3d 149, 151 (1st Cir. 2016). It nevertheless unequivocally stated "we emphasize that we now doubt the correctness of [that] brief, yet controlling, footnote" and, "[al]though we as a panel must follow Igartúa IV, the three-judge-court issue is one of substantial importance that should be reconsidered by the full court in an en banc rehearing of this case."[7] Thus, an issue which was "not . . . in [that] case" was decided in a summary, passing manner. Igartúa IV, 626 F.3d at 598 n.6. It now clearly deserves consideration by the full court because it fundamentally affects the constitutional rights of several million citizens, a quintessential question of "exceptional importance."

(2) With respect, both the district court and the members of this court who have voted against en banc review have committed a fundamental error of law in considering the possible ultimate outcome of the underlying question raised by Appellants' petition as a deciding factor in whether a three-judge district court should be convened. The focus in deciding this question should have been whether Appellants' constitutional claims are "wholly insubstantial." Vazza v. Campbell, 520 F.2d 848, 849 (1st Cir. 1975). Id. ("Since no three-judge court was convened, we can affirm the dismissal of the action only if appellant's constitutional claims are 'wholly insubstantial.'" (quoting Goosby v. Osser, 409 U.S. 512, 518 (1973))).

In Igartúa IV, the court decided in a conclusory footnote that the case did not have to be heard by a three-judge court, but failed to consider the issues that actually determine whether a three-judge court must be convened: (1) whether 28 U.S.C. § 2284(a) in fact covered the type of

---

[5] See also Igartúa de la Rosa v. U.S., 407 F.3d 30 (1st Cir. 2005).

[6] That footnote states in its entirety: "We also reject the argument made by Igartúa, but not made by the government, that this case must be heard by a three-judge district court under 28 U.S.C. § 2284(a). That statute provides that a district court of three judges shall be convened when . . . an action is filed challenging the constitutionality of the apportionment of congressional districts. That is not the issue in this case." (alteration in original) (emphasis added) (citation and quotations omitted). Igartúa IV, 626 F.3d at 598 n.6.

[7] Igartúa v. Obama, 842 F.3d 149, 151 (1st Cir. 2016).

claim raised by Igartúa, and (2) whether there was a "substantial federal question." Shapiro v. McManus, 136 S. Ct. 450, 455 (2015). In its opposition to en banc, the government fails to address precedents discussed at length in the majority opinion regarding these two issues and dismisses Adams v. Clinton, 90 F. Supp. 2d 35, 72 (D.D.C.), aff'd, 531 U.S. 941 (2000), in a footnote, arguing in essence that the District of Columbia and the Commonwealth of Puerto Rico are distinct.

In Adams, residents of the District of Columbia challenged their exclusion by Congress from apportionment to a congressional district. Adams v. Clinton, 26 F. Supp. 2d 156, 157-58 (D.D.C. 1998). The district judge concluded that plaintiffs' nonapportionment claims were covered by § 2284(a), and convened a three-judge panel, id. at 161, which ultimately dismissed the case on the merits. Adams, 90 F. Supp. at 72 (three-judge panel). On direct appeal, the parties squarely raised the jurisdictional issue before the Supreme Court. The Court affirmed the judgment of the three-judge district court without explanation, 531 U.S. at 941, thus implying that the three-judge court had been properly convened for the nonapportionment claim. The government's attempt to dismiss the significance of Adams by merely arguing in a footnote that the District of Columbia and the Commonwealth of Puerto Rico are meaningfully distinct in both history and character is a red herring. Any difference to this effect has no relevance to the Supreme Court's implied reasoning that a claim of nonapportionment is, in essence, a challenge to the apportionment of a congressional district, which requires that a three-judge court be convened. And that is the legal question at issue here: whether a three-judge court must have been convened for Appellants' nonapportionment claims.

The government further argues that Appellants' constitutional claims are not "justiciable" because "[n]o court can require a constitutional amendment, order that Puerto Rico be admitted into the Union as a state, or enjoin Congress to enact new legislation." Although the government uses the term "justiciable," its argument is actually that the complaint fails to state a claim for which relief can be granted. Failure to state a claim upon which relief may be granted, however, is not the proper standard. Rather, as previously indicated, we need to focus on whether Appellants' constitutional claims are "wholly insubstantial." Vazza, 520 F.2d at 849. Thus, it is not enough that the government and some members of this court might consider the claim to be without merit. Shapiro, 136 S. Ct. at 456 ("Perhaps petitioners will ultimately fail on the merits of their suit, but § 2284 entitles them to make their case before a three-judge district court."). Because the substantiality threshold is not a test of whether the allegations in the complaint state a claim for relief on the merits and, as discussed in the majority opinion, Appellants' claims are not "wholly insubstantial," the government's response is unpersuasive.

The members of this court who have voted against en banc review reject on the merits the panel's suggestion that a constitutional claim may arise from the government's failure to abide by the obligations imposed by the International Covenant on Civil and Political Rights ("ICCPR"). A majority of the en banc court, if convened, might ultimately agree with that assessment. But the court should not be deciding the issue without thorough briefing and full deliberation.

Indeed, dismissing the treaty argument on the ground that it merely identifies a conflict between two legislative enactments ignores the unique status of treaties as a source of federal law. Treaties are not garden-variety statutory enactments, see U.S. Const., Art. II, § 2 (giving the President power "to make Treaties, provided two thirds of the Senators present concur"), and their status under the Supremacy Clause means they can override inconsistent legislation, see, e.g.,

Julian G. Ku, Treaties as Laws: A Defense of the Last-in-Time Rule for Treaties and Federal Statutes, 80 Ind. L.J. 319, 322 (2005) (noting that some scholars "believe that treaties have domestic effect superseding inconsistent domestic law"); id. at 334-35 (noting that "when conflict occurs between a treaty and a federal statute, the courts apply the last-in-time rule, which holds that 'a treaty may supersede a prior act of Congress and an act of Congress may supersede a prior treaty'" (quoting Cherokee Tobacco, 78 U.S. (11 Wall.) 616, 621 (1871)); but see Vasan Kesavan, The Three Tiers of Federal Law, 100 Nw. U.L. Rev. 1479, 1633 (2006) (rejecting the first-in-time rule as unconstitutional and concluding that "[t]he Constitution establishes three tiers of federal law," with statutes superior to treaties). Hence, if Congress is obliged by the ICCPR to provide all citizens an equal right to vote -- and assuming no other constitutional provision bars that action -- Congress arguably would have to re-do the current apportionment of representatives to include citizens residing in Puerto Rico within an apportionment plan. That scenario does not present a conflict between two laws of equal stature. A binding treaty that broadens the objectives of congressional apportionment would necessarily trigger revision of an inconsistent mathematical formula for apportionment.

While this view of the United States' treaty commitments may be debatable, the majority of the active judges are unwilling even to engage on the complex questions raised here. Their rationale for rejecting deliberation -- that, at most, we have a run-of-the-mill statutory conflict -- is to choose one framing of the argument over another. There is no doubt that the three-judge-court issue was decided in a cursory manner without any reasoning or explanation in Igartúa IV. A bereft footnote should not be our "binding precedent" for such an important issue of law. An en banc court should be convened so that we can give the issue due consideration after additional briefing by the parties.[8]

In sum, this case presents important issues at the very heart of what it means to be a democracy. They deserve consideration by our full court and certainly greater deliberation than they were given in a footnote about an issue that was not before us. A report by the Senate Judiciary Committee regarding the amendment of the Three-Judge Court Act stresses that challenges to apportionment issues "are of such importance that they ought to be heard by a three-judge court." S. Rep. No. 94-204, at 9 (1975). This further reinforces that this case presents a question of exceptional importance that warrants en banc review. Because the majority of this court thinks otherwise, I respectfully dissent.

**LIPEZ**, **Circuit Judge**. I write to record my disappointment that a majority of the active judges of this court have refused to allow en banc review of appellant's contention that a three-judge court should have been convened to decide in the first instance whether United States citizens who reside in Puerto Rico have a constitutional right to vote in certain federal elections. Bound by prior precedent, the panel had no choice but to reject that contention, and we thus upheld the dismissal of the complaint. See Igartúa v. Obama, 842 F.3d 149, 151 (1st Cir. 2016) ("Igartúa V"). We emphasized, however, that our decision "should not properly, or fairly, be the end of the

---

[8] There are no logistical reasons for why an en banc court should not be convoked. This court last had an en banc in January 2015 and before that it had only two since 2012. Our statistics show fewer and fewer cases are being heard, a trend that has been going on for some time. We are hardly overworked.

case." Id. at 152. We urged our colleagues to grant any forthcoming request for en banc review "without delay." Id. at 160.

I will not repeat here the reasoning that led the panel to question our court's prior cursory holding that the three-judge-court statute does not cover the right-to-vote claim that appellant asserts. See id. at 153-59. It suffices to say that the issue is complex, our precedent does not seriously address it, and the right ultimately at stake -- "the fundamental privilege of voting," Igartúa v. United States ("Igartúa IV"), 626 F.3d 592, 610 (Lipez, J., concurring in the judgment) -- is undeniably of "exceptional importance." Fed. R. App. P. 35(a)(2). There could be no more compelling circumstances for en banc review. The certainty of our colleagues that the petition for en banc review does not raise a constitutional issue within the meaning of the three-judge-court statute is premature. Assisted by the comprehensive briefing that would accompany such review, we would be better positioned to consider the applicable law and achieve the correct outcome. I am deeply disappointed by my colleagues' failure to acknowledge that the issues presented here are worthy of this court's thorough deliberation and fully articulated analysis.

**THOMPSON**, **Circuit Judge, dissenting from the denial of rehearing en banc.** Bravo to Judges Torruella and Lipez for showing us just how wrong the decision not to hear this case en banc really is. Allow me to add my words of protest too.

Plaintiffs' en-banc request turns on whether a district judge should've convened a three-judge court to decide a question of transcendent importance — do U.S. citizens/residents in Puerto Rico have a constitutional right to vote in certain federal elections? The problem here is that an earlier decision of this court — one that only an en-banc court can reverse — held that a three-judge court isn't required to hear a claim like plaintiffs'. See Igartúa v. United States, 626 F.3d 592, 598 n.6 (1st Cir. 2010), en banc review denied, 654 F.3d 99 (1st Cir. 2011), cert. denied, 132 S. Ct. 2376 (2012). Given how significant the three-judge-court issue is — for reasons well discussed by Judges Torruella and Lipez — one might expect the prior panel to have offered a good deal of analysis and reasoning to support its conclusion. Alas, one would be mistaken. The prior panel said just this — in a footnote, no less:

> We also reject the argument made by Igartúa, but not made by the government, that this case must be heard by a three-judge district court under 28 U.S.C. § 2284(a). That statute provides that a "district court of three judges shall be convened when . . . an action is filed challenging the constitutionality of the apportionment of congressional districts." Id. That is not the issue in this case.

Id. (ellipses in original). Yes, that's all the footnote said — hardly a serious treatment of a complex issue, and a conclusion that's very likely wrong to boot, as Igartúa v. Obama, 842 F.3d 149, 153-59 (1st Cir. 2016), persuasively explained.

For me, the matter comes down to these indisputable points: The applicability of the three-judge-court statute is legally intricate. See id. (showing in detail why that is so). The right to vote is perhaps the most precious enjoyed by America's citizens. See generally Bonas v. Town of N. Smithfield, 265 F.3d 69, 74 (1st Cir. 2001) (noting "that the right to vote" is "the wellspring of all rights in a democracy"). And before depriving *millions and millions* of Americans of that right,

we should at least take the time to explain our thinking in a binding en-banc opinion — something the above-quoted footnote unquestionably does *not* do.[9]

Ultimately, then, if this case does not "involve[] a question of exceptional importance," <u>see</u> Fed. R. App. P. 35(a), I don't know what does.

By the Court:
<u>/s/ Margaret Carter, Clerk</u>

cc:
Hon. Jay A. Garcia-Gregory
Frances Rios de Moran, Clerk, United States District Court for the District of Puerto Rico
Gregorio Igartua
Mariana E. Bauza Almonte
Mark R. Freeman

---

[9] Taking plaintiffs' case en banc will give us the benefit of on-point briefing by the parties and interested amici on this oh-so-important issue, as Judge Lipez notes.