# United States Court of Appeals
## For the First Circuit

No. 15-1336

GREGORIO IGARTÚA, et al.,

Plaintiffs, Appellants,

v.

BARACK OBAMA, President of the United States of America;
PENNY PRITZKER, Secretary of Commerce; KAREN L. HAAS, Clerk of
the U.S. House of Representatives,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Gregorio Igartúa for appellants.
Mark R. Freeman, Attorney, Appellate Staff, Civil Division,
U.S. Department of Justice, with whom Benjamin C. Mizer, Principal
Deputy Assistant Attorney General, Carmen M. Ortiz, United States
Attorney, and Matthew M. Collette, Attorney, Appellate Staff,
Civil Division, U.S. Department of Justice, were on brief for
appellees.

November 23, 2016

**LIPEZ, Circuit Judge**.  Plaintiff Gregorio Igartúa, a U.S. citizen-resident of Puerto Rico, returns to this court for the fifth time in search of a legal remedy for his claim that he has a constitutional right to vote in certain federal elections. Here, for the second time, Igartúa and his fellow plaintiffs specifically challenge the denial of the right of Puerto Rico citizens to vote for representatives to the U.S. House of Representatives and their right to have five Puerto Rico representatives apportioned to that body.  Plaintiffs also assert that the district court again erred in refusing to convene a three-judge court to adjudicate their claims.

When Igartúa first raised the issue of congressional representation in 2010, a panel majority disposed of the three-judge-court issue in a footnote.  On the merits, it concluded that we were bound by past circuit decisions to find that "the Constitution does not permit granting such a right to the plaintiffs by means other than those specified for achieving statehood or by amendment."  Igartúa v. United States ("Igartúa IV"), 626 F.3d 592, 594, 598 n.6 (1st Cir. 2010), en banc review denied, 654 F.3d 99 (1st Cir. 2011), cert. denied, 132 S. Ct. 2376 (2012).  As we explain in Section I below, we again find ourselves bound by circuit precedent, and we thus must affirm the judgment of the district court refusing to convene a three-judge court and dismissing the case on the merits.

In so doing, however, we emphasize that we now doubt the correctness of the brief, yet controlling, footnote in Igartúa IV rejecting the call for a three-judge court.  See 626 F.3d at 598 n.6.[1]  Moreover, if our court were now to conclude, in an en banc proceeding, that a three-judge panel should have been convened to hear the constitutional claims addressed in Igartúa IV, the merits ruling in Igartúa IV would be void.  See infra.  Hence, though we as a panel must follow Igartúa IV, the three-judge-court issue is one of substantial importance that should be reconsidered by the full court in an en banc rehearing of this case.

## I. The Instant Appeal

In all material respects, this action is a reprise of Igartúa IV.  As the district court noted, "Plaintiffs' arguments in the Complaint at bar are nearly identical to the ones raised in Igartúa IV."  Igartúa v. United States, No. 3:14-cv-01558-JAG, slip op. at 2 (D.P.R. Jan. 28, 2015).  In addition, the parties in the two cases largely overlap.  Four of the six plaintiffs here were plaintiffs in Igartúa IV.  The defendants in Igartúa IV were the President of the United States, the U.S. Secretary of Commerce,

---

[1] Although we share our colleague's concern about the brevity of footnote 6, see infra, the fact remains -- as discussed below -- that the Igartúa IV panel could not have addressed the merits of that appeal if the case should have been heard originally by a three-judge court.  Hence, the rejection of Igartúa's demand for a three-judge court was essential to the disposition in Igartúa IV, and it is therefore binding on us.

- 3 -

and the Clerk of the U.S. House of Representatives -- the same defendants as here.

The legal rulings made in Igartúa IV are thus binding on most of the parties in this action under principles of res judicata, see Haag v. United States, 589 F.3d 43, 45 (1st Cir. 2009), and, in any event, the doctrine of stare decisis bars us, as a panel, from reaching a different conclusion on the same questions of law, see United States v. González-Mercado, 402 F.3d 294, 299 (1st Cir. 2005) ("We have heard and rejected this argument before. Under the doctrine of stare decisis, then, the issue is foreclosed." (citations omitted)); see also United States v. Mouscardy, 722 F.3d 68, 77 (1st Cir. 2013) (noting that an earlier panel decision binds a later panel under "[t]he law of the circuit doctrine").

Hence, because we are not at liberty to depart from the dispositive holdings in Igartúa IV, we must affirm the judgment of the district court granting defendants' motion to dismiss.[2]

---

[2] The district court seemingly offered two reasons for denying plaintiffs' request for a three-judge court. First, it relied on footnote 6 in Igartúa IV, which summarily rejected the same request in that case. Second, the court appeared to treat the merits decision in Igartúa IV as a separate basis for its ruling, observing that plaintiffs' request for a three-judge panel was "unfounded" because "the controlling authority relevant to this case" rendered their claims "wholly insubstantial." Slip op. at 5 (quoting Vazza v. Campbell, 520 F.2d 848, 850 (1st Cir. 1975)). We explain below why the latter rationale is incorrect.

On the merits, the district court concluded that it did not have subject matter jurisdiction over plaintiffs' claims because

However, having closely examined the pertinent law, we are persuaded that a summary affirmance should not properly, or fairly, be the end of the case.

## II. The Three-Judge-Court Requirement

Under 28 U.S.C. § 2284(a), "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts." Accordingly, when the district court judge originally assigned to a case determines that one or more of the plaintiff's claims warrants a three-judge court, the judge must take the steps necessary to convene a three-judge panel. See 28 U.S.C. § 2284(b); see also Shapiro v. McManus, 136 S. Ct. 450, 454 (2015). The three-judge court's ruling on the merits of such claims is appealable only to the U.S. Supreme Court. See 28 U.S.C. §§ 1253, 1291; Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715-16 (1962). Hence, when a three-judge court is properly convened to hear claims within the scope of § 2284(a), the court of appeals does not play a role in resolving the merits. See

_____

they lacked standing. Again relying on Igartúa IV, the court held that "Plaintiffs have not demonstrated that a legally protected interest was harmed in this case." Slip op. at 8; see also id. at 12. We do not address the validity of the court's standing rationale and instead affirm based on the reasoning described above (i.e., res judicata and stare decisis). See Otero v. P.R. Indus. Comm'n, 441 F.3d 18, 20 (1st Cir. 2006) ("We review the district court's order of dismissal de novo and may affirm on any ground supported by the record.").

Idlewild Bon Voyage Liquor Corp., 370 U.S. at 715-16 (noting that a court of appeals is "precluded from reviewing on the merits a case which should have originally been determined by a court of three judges").

If a case is brought improperly to the court of appeals -- because the district court erroneously refused to convene a three-judge court -- any subsequent merits ruling by the appellate panel is void. See Stratton v. St. Louis Sw. Ry. Co., 282 U.S. 10, 16 (1930) ("Nor does an appeal [on the merits] lie to the Circuit Court of Appeals from an order or decree thus entered by a District Judge without authority, for to sustain a review upon such an appeal would defeat the purpose of the statute by substituting a decree by a single judge and an appeal to the Circuit Court of Appeals for a decree by three judges and a direct appeal to th[e] [Supreme] Court.").[3]

Thus, if a three-judge district court should have been convened to address the constitutional claims asserted in Igartúa IV, our rejection of Igartúa's claims on the merits in that case would have no precedential force here. The three-judge-court question in Igartúa IV was therefore of great consequence --

---

[3] Of course, the single-judge district court's merits ruling in such a case is likewise without force. See 28 U.S.C. § 2284(b), (b)(3) (stating that "[i]n any action required to be heard and determined by a district court of three judges," a "single judge shall not . . . enter judgment on the merits").

- 6 -

affecting our very authority to hear the case.[4]  Yet, the issue

was decided with the following footnote:

> We also reject the argument made by Igartúa,
> but not made by the government, that this case
> must be heard by a three-judge district court
> under 28 U.S.C. § 2284(a).  That statute
> provides that a "district court of three
> judges shall be convened when . . . an action
> is filed challenging the constitutionality of
> the apportionment of congressional
> districts."  Id.  That is not the issue in
> this case.

Igartúa IV, 626 F.3d at 598 n.6.[5]

This unelaborated assertion belies the complexity of

Igartúa's contention that he is entitled to have his claims heard

by a three-judge district court.  Moreover, there is reason to

doubt the correctness of the footnote's rejection of the

---

[4] We find it unnecessary to opine on whether the three-judge-court statute is "jurisdictional," an issue whose complexity was reflected in questions from the justices during oral argument in Shapiro.  See Transcript of Oral Argument at 11-19, Shapiro, 136 S. Ct. 450 (No. 14-990). Regardless of how the statute is labeled, the fact remains that Congress has directed that constitutionally based apportionment actions be heard by a three-judge district court in the first instance (when requested as Igartúa did here) and then by the Supreme Court, see 28 U.S.C. §§ 2284(a), 1253, thereby foreclosing the courts of appeals from entertaining such claims.  The Court in Shapiro also did not classify § 2284(a). Rather, its discussion focused on whether the plaintiffs' claims presented "a substantial federal question" such that the complaint was "justiciable in the federal courts."  136 S. Ct. at 455 (quoting Gonzalez v. Automatic Emps. Credit Union, 419 U.S. 90, 100 (1974)).

[5] Two members of this panel also were panel members in Igartúa IV.  The author of this opinion wrote a separate opinion concurring in the judgment in that case, and Judge Torruella filed an opinion concurring in part and dissenting in part.

- 7 -

applicability of § 2284(a).  To demonstrate the need to revisit our cursory holding, we review below the issues that determine whether a three-judge court must be convened.  We first consider whether § 2284(a) in fact covers the type of claim raised by Igartúa and then examine the requirement of a "substantial federal question."  See Shapiro, 136 S. Ct. at 455.

**A. Scope of the Three-Judge-Court Statute**

The three-judge-court statute applies to a claim "challenging the constitutionality of the apportionment of congressional districts."  28 U.S.C. § 2284(a) (emphasis added). As recounted above, in footnote 6 in Igartúa IV, we stated simply: "That is not the issue in this case."  We understand that cryptic comment to mean that the statute does not cover Igartúa's claims because Igartúa challenges Congress's failure to include Puerto Rico within its apportionment of districts instead of attacking a specific apportionment of districts.  Supreme Court precedent, however, supports a broader view of the statute.

In 1998, Lois Adams and other residents of the District of Columbia filed a complaint in federal district court alleging that "Congress has unconstitutionally excluded them from apportionment to a congressional district," in violation of Article IV's Guarantee Clause[6] and the Fourteenth Amendment.  Adams

---

[6] The Guarantee Clause provides:

- 8 -

v. <u>Clinton</u>, 26 F. Supp. 2d 156, 157–58 (D.D.C. 1998). Adams and her co-plaintiffs requested that the case be heard by a three-judge district court under § 2284(a). <u>Id.</u> Over the objections of the defendants -- including the President of the United States and officers of the U.S. House of Representatives -- the district judge concluded that Adams' nonapportionment claims were covered by § 2284(a) and asked the chief judge of the district to convene a three-judge district court to hear the case. <u>Id.</u> at 161.

In deciding the case, a majority of the three-judge panel noted that "[t]he parties have not asked us to revisit the original judge's determination that this case falls within the confines of the three-judge court statute, and we will not do so insofar as the complaints allege the failure to apportion members of the House of Representatives to the District." <u>Adams</u> v. <u>Clinton</u>, 90 F. Supp. 2d 35, 38 (D.D.C. 2000) (three-judge court). The majority concluded that the plaintiffs had standing, but then went on to grant the defendants' motions to dismiss on the merits.[7] <u>Id.</u> at

_____

The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.

U.S. Const., art. IV, § 4.

[7] The panel majority largely considered the claims raised by plaintiff Clifford Alexander, whose case had been consolidated with that of Adams. <u>Adams</u>, 90 F. Supp. 2d at 38, 45-72. The

45, 72.

Adams appealed the decision of the three-judge court directly to the Supreme Court, see 28 U.S.C. § 1253, insisting, inter alia, that the case was properly before a three-judge court under § 2284(a). See Jurisdictional Statement at *21-30, Adams v. Clinton, 531 U.S. 941 (2000) (No. 00-97), 2000 WL 33999989. In response, the government filed a "Motion to Dismiss or Affirm." Motion to Dismiss or Affirm, Adams, 531 U.S. 941 (No. 00-97). In the opening paragraph of the Argument section of its motion, the government asked the Court to dismiss the appeal either because the "three-judge district court lacked jurisdiction over appellants' claim" or because "appellants lack standing to seek the relief that they have requested from any federal court." Id. at 9. In the alternative, the government asked the Court to "affirm the judgment of the three-judge court because appellants' constitutional claim lacks merit." Id. (emphasis added).[8]

---

majority held, inter alia, that Article I of the Constitution reserved the right to vote in congressional elections to residents of states, id. at 45-46, 70-71, and that "constitutional text, history, and judicial precedent bar[red] [the court] from accepting plaintiffs' contention that the District of Columbia may be considered a state for purposes of congressional representation under Article I," id. at 55-56. The panel further held that the Guarantee Clause could not have been intended to override the provisions of Article I, id. at 71, and also rejected the plaintiffs' argument that they were entitled to vote "based on a theory of 'residual' citizenship" in Maryland, id. at 56-61.

[8] At the conclusion of its argument for dismissal, the government offered yet another possible disposition, asserting that the Court could affirm the dismissal of appellants' claims

- 10 -

The Supreme Court affirmed the judgment of the three-judge district court without explanation. Adams v. Clinton, 531 U.S. 941 (2000) ("Judgment affirmed."). The Court also noted that "Justice STEVENS would dismiss the appeal." Id. Given the government's arguments distinguishing between dismissal and affirmance, and Justice Stevens' position that dismissal -- rather than affirmance -- was appropriate, the Court's decision to affirm appears to signify a determination that the three-judge court was properly convened for Adams' nonapportionment claim. Indeed, the Court has previously held that where a "three-judge court was . . . improperly convened, . . . this Court does not have jurisdiction to entertain a direct appeal from the judgment in such case." Mobay Chem. Corp. v. Costle, 439 U.S. 320, 321 (1979) (per curiam)

---

based on standing. Motion to Dismiss or Affirm, supra, at 16-17. That option necessarily presumed that the Court had jurisdiction (and, hence, could affirm the judgment of the three-judge court, rather than dismiss, the appeal). Yet, even after asserting that affirmance would be warranted based on lack of standing, the government again pressed for dismissal on that basis:

> However, dismissal of the appeal rather than affirmance of the judgment is warranted because there is at least a substantial question as to the jurisdiction of the district court under Section 2284(a), but appellants' lack of standing clearly forecloses their ability to obtain relief from the federal courts.

Id. at 17.

(citation omitted).

Notably, the government itself adopted the view that the Supreme Court had determined that Adams' claim was properly brought under § 2284(a).  After the Supreme Court decision, Adams returned to the three-judge court with a motion filed under Federal Rule of Civil Procedure 60(b) seeking reconsideration of her dismissed claims.  The three-judge court denied the motion,[9] and Adams appealed that denial to the D.C. Circuit.  The D.C. Circuit dismissed the appeal for lack of jurisdiction, stating that the "appeal from the three-judge district court's denial of relief . . . is not properly taken to this court."  Adams v. Bush, No. 00-5239, 2001 WL 1488944, at *1 (D.C. Cir. 2001) (per curiam).  Adams petitioned for a writ of certiorari.  In its brief in opposition, the government wrote:

> In its motion to dismiss or affirm petitioners' prior direct appeal, the government argued that petitioners' direct appeal should be dismissed because 28 U.S.C. 2284(a) did not give the district court jurisdiction over petitioners' equal protection claim.  Instead of dismissing the appeal for lack of jurisdiction, however, this Court affirmed the judgment of the three-judge court on the merits.  That determination by this Court that the three-judge district court

---

[9] In a two-page per curiam decision, the three-judge court rejected plaintiffs' argument that it had misunderstood and failed to address their claims, and further observed that the Supreme Court's affirmance of the court's earlier decision leaves "no ground for granting relief under Rule 60(b)(4) or for exercising our discretion under Rule 60(b)(6)."  Adams v. Bush, No. 1:98-cv-01665, slip op. at 2 (D.D.C. Apr. 4, 2001) (three-judge court).

- 12 -

was properly convened under Section 2284(a) "settles the issue[] for the parties."

Br. for the President of the United States in Opposition at 6 n.2, Adams v. Bush, 537 U.S. 812 (2002) (No. 01-1519) (alteration in original) (citation omitted) (quoting Mandel v. Bradley, 432 U.S. 173, 176 (1977) (per curiam)).

In other words, the government interpreted the Supreme Court's affirmance in Adams to mean that the nonapportionment claim was properly before the three-judge court and that the plaintiffs' appeal of that panel's decision was properly before the Supreme Court. The proceedings in Adams thus provide strong support for Igartúa's argument that § 2284(a) covers a challenge to nonapportionment -- in addition to claims of improper apportionment.

A ruling by the Supreme Court that Adams' nonapportionment claim was properly addressed by a three-judge court cannot be disregarded as a nonprecedential "drive-by jurisdictional ruling." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91 (1998). Such limited judgments occur when the jurisdictional issue "was neither challenged nor discussed in that case." Lewis v. Casey, 518 U.S. 343, 352 n.2 (1996) (cited in Steel Co., 523 U.S. at 91). As discussed above, the parties' briefs fully addressed whether Adams' nonapportionment claim was covered by the three-judge-court statute, and the government

- 13 -

explicitly challenged the jurisdiction of the three-judge court and, in turn, that of the Supreme Court to hear the case. See Motion to Dismiss or Affirm at 9-12, Adams, 531 U.S. 941 (No. 00-97).

Moreover, simply as a matter of language, we see no reason to treat a claim that challenges the failure to apportion any congressional districts -- entirely excluding a group of United States citizens from representation in Congress -- differently from a claim that challenges the allocation of too few congressional districts. As the single-judge district court in Adams reasoned, a challenge to nonapportionment is simply one type of apportionment challenge. See Adams, 26 F. Supp. 2d at 161 ("These plaintiffs . . . challenge their existing allocation of zero representatives." (emphasis omitted)).

An inclusive construction of § 2284(a)'s language is also supported by the singular importance legislators attributed to apportionment claims when the Three-Judge Court Act was amended in 1976. A report by the Senate Judiciary Committee on the proposed amendment listed multiple reasons for eliminating the three-judge-court requirement for various types of claims. S. Rep. No. 94-204, at 3-4.[10] Yet despite the goal to limit use of three-

_____

[10] The reasons included: "to relieve the burden of three judge court cases, which have increased in number from 129 in 1963 to 320 in 1973, causing a considerable strain on the workload of Federal judges," and "because statutory and rules changes have

- 14 -

judge courts, the Report expressly endorsed retaining the procedure "for cases involving congressional reapportionment or the reapportionment of a statewide legislative body because . . . these issues are of such importance that they ought to be heard by a three-judge court." Id. at 9. A narrow reading of "apportionment" undermines the objective to retain the three-judge court procedure for these "importan[t]" claims.

Nor do we find an impediment to applying the three-judge-court statute to Igartúa's claims in the language that requires a challenge to "the constitutionality of the apportionment of congressional districts," 28 U.S.C. § 2284(a) (emphasis added). Igartúa's claim involves such a challenge. Members of this court have seen arguable merit, in particular, in Igartúa's claim that the International Covenant on Civil and Political Rights ("ICCPR") -- which recognizes the right of "[e]very citizen" to elect representatives -- is a self-executing treaty that must be enforced, absent a constitutional prohibition, as "the supreme Law of the Land," U.S. Const. art. VI, cl. 2. See Igartúa IV, 626 F.3d at 608-11 (Lipez, J., concurring in the judgment); id. at 620-628 (Torruella, J., concurring in part and dissenting in part); see also Dist. Ct. Op. at 12-13 (advising the First Circuit to "reconsider its decision that Article 25 of the

---

eliminated the original reasons for the establishment of three-judge courts." S. Rep. No. 94-204, at 3-4.

ICCPR is a non-self-executing provision"). In other words, plaintiffs' treaty-based claim is a constitutional claim that defendants have violated the Supremacy Clause of the Constitution by failing to comply with the United States' obligation, under the ICCPR, to apportion congressional districts so as to provide all citizens with representation.

In sum, there is substantial merit in plaintiffs' assertion that their claim to representation in the House of Representatives is within the scope of § 2284(a).

## B. Substantiality

The Supreme Court has observed that, when deciding whether a three-judge court must be convened, "all the district judge must 'determin[e]' is whether the 'request for three judges' is made in a case covered by § 2284(a) -- no more, no less." Shapiro, 136 S. Ct. at 455 (quoting 28 U.S.C. § 2284(b)(1)) (alteration in original). The Court went on to explain, however, that this simple statement presumes subject-matter jurisdiction: "A three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts." Id. (alteration omitted) (quoting Gonzalez v. Automatic Emps. Credit Union, 419 U.S. 90, 100 (1974)).

In other words, ordinary subject matter jurisdiction requirements apply to the request for a three-judge court. An

- 16 -

apportionment challenge falling within the terms of § 2284(a) will not require a three-judge court if the claim is "wholly insubstantial and frivolous" such that a federal court would lack subject matter jurisdiction to hear it. Id. (quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946)); see also Vazza v. Campbell, 520 F.2d 848, 849 (1st Cir. 1975) (noting that we could affirm the dismissal of an action by a single-judge district court who had refused to request a three-judge court for a claim otherwise calling for one "only if appellant's constitutional claims are 'wholly insubstantial'" (quoting Goosby v. Osser, 409 U.S. 512, 512 (1973))). Thus, before convening a three-judge court, the district court must conclude that a plaintiff's claim presents "a substantial federal question." Shapiro, 136 U.S. at 455.

The Supreme Court has made clear that this substantiality threshold is not a test of whether the allegations in the complaint state a claim for relief on the merits. Indeed, the Court expressly rejected the notion that, "where the 'pleadings do not state a claim, then by definition they are insubstantial and so properly are subject to dismissal by the district court without convening a three-judge court.'" Shapiro, 136 S. Ct. at 455 (emphasis omitted) (quoting Duckworth v. State Admin. Bd. of Elec. Laws, 332 F.3d 769, 772-73 (4th Cir. 2003)). The Court described the failure-to-state-a-claim standard as "both too demanding and inconsistent with our precedents," and it reiterated

- 17 -

that "'constitutional claims will not lightly be found insubstantial for purposes of' the three-judge-court statute." Id. (quoting Washington v. Confederated Tribes of Colville Reservation, 447 U.S. 134, 147-48 (1980)). Hence, it is not enough for a claim to be without merit; rather, to fall short of the "substantial federal question" threshold, a claim must be "legally speaking non-existent" or "essentially fictitious." Id. at 455-56 (quoting Bailey v. Patterson, 369 U.S. 31, 33 (1962) (per curiam)).

Although we did not say so expressly, we had to have concluded in Igartúa IV that Igartúa's claims meet the substantiality requirement for subject matter jurisdiction. There, we decided his claims on the merits, see 626 F.3d at 594-606, a step that we would not, and could not, have taken if those claims did not involve a substantial federal question. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quoting Ex parte McCardle, 7 Wall. 506, 514 (1868))).

Nor does our decision in Igartúa IV itself render the claims in this case insubstantial for the purpose of subject-matter jurisdiction. As explained above, if the district court and First Circuit panel were wrong about the applicability of § 2284(a) -- and the case should have been heard in the first instance by a three-judge court -- the prior panel's merits

- 18 -

decision would not stand and, hence, it could not create binding law.[11]

The exclusion of the courts of appeals from the § 2284(a) scheme also helps to explain why the Supreme Court has indicated that only its own precedent can undermine a claim that otherwise would scale the statute's subject-matter threshold. In Goosby, the Court held that one of its prior decisions did not render insubstantial an otherwise viable claim brought under the three-judge court statute, and thus a three-judge court was required. See 409 U.S. at 518. In so finding, the Court stated that such a claim is insubstantial only if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." Id. (quoting Ex parte Poresky, 290 U.S. 30, 32 (1933)) (emphasis

_____

[11] Just such a scenario was contemplated in the Senate Judiciary Committee Report at the time the three-judge court statute was amended in 1976. The Report, in part, outlined the "[c]omplexities of [a]ppellate [r]eview" of "whether a three-judge court is needed." S. Rep. No. 94-204, at *6. Quoting Professor Charles Allen Wright, the Committee stated:

> If the single judge incorrectly believes that three judges are not required and proceeds to the merits, the remedy . . . [is] an appeal to the court of appeals. If the court of appeals should fail to see that the case was one for three judges, and reviews on the merits, its decision is void.

Id.; see Idlewild Bon Voyage Liquor Corp., 370 U.S. at 715-16.

added); cf. Shapiro, 136 S. Ct. at 456 (concluding that a claim was substantial even though a plurality of the Court had found it nonjusticiable in a prior case, but a concurring justice supported the plaintiffs' legal theory (discussing Vieth v. Jubelirer, 541 U.S. 267 (2004))).

Within the context of the three-judge court scheme, the Court's reference in Goosby to the preclusive effect of its own prior decisions must be understood as a limiting statement on the relevance of court of appeals precedent. In ordinary cases first involving appeals to the intermediate courts of appeals, the Supreme Court has the last word on issues of federal law when it chooses to hear a case. Under the three-judge-court framework, the Supreme Court provides the only level of appellate review. A fortiori, Goosby instructs, a claim cannot be rejected for lack of "a substantial federal question" unless "its unsoundness so clearly results from the previous decisions of [the Supreme Court]." Goosby, 409 U.S. at 518.[12]

---

[12] Indeed, some justices have questioned whether even conclusive, adverse Supreme Court precedent can foreclose review by a three-judge court of an issue within the scope of § 2284(a). During oral argument in Shapiro, Chief Justice Roberts hypothesized a claim "clearly foreclosed by the Court's precedents, but maybe there's a very good argument that . . . those precedents . . . haven't withstood the test of time." Transcript of Oral Argument at 6, Shapiro, 136 S. Ct. 450 (No. 14-990). When counsel responded that the single-judge district court would properly dismiss that case under Goosby, Justice Kennedy noted that he had "some problems with that." Justice Kennedy then elaborated on the hypothetical: "Suppose . . . the case has been

Also, the Supreme Court's summary affirmance in Adams does not render Igartúa's claims insubstantial. While the challenges in both Adams and here concern the nonapportionment of congressional districts for citizens residing outside the states, the District of Columbia and the Commonwealth of Puerto Rico are meaningfully distinct in both history and character.

Moreover, Adams did not address the implications of the ICCPR or "the view that the Constitution does not necessarily forbid extensions of the rights it delineates." Igartúa IV, 626 F.3d at 608 (Lipez, J., concurring in the judgment). The possibility that the Constitution does not prohibit equal voting rights for Puerto Rico residents through congressional action was considered by two panel members in Igartúa IV and has had academic recognition. See Igartúa IV, 626 F.3d at 616 (Torruella, J., concurring in part and dissenting in part) ("[W]hile the text of Section 2, Article I does not grant to citizens of Puerto Rico the right to vote for members of the House of Representatives, neither does it prohibit them that right, nor act as a limitation on the

_____

on the books from this Court for 15, 20 years, has all sorts of academic commentary; certain circuits have questioned whether the reasoning is still valid." Id. at 7. Counsel gave the same response. In Shapiro, however, the Court did not need to reach the role of such dispositive precedent as it concluded that its cases did not foreclose the petitioners' claim. See 136 S. Ct. at 456.

- 21 -

federal government's authority to extend the franchise to territorial residents under other constitutional powers."); id. at 608 (Lipez, J., concurring in the judgment) ("If the Constitution does not prohibit extending the right to vote to citizens who reside outside 'the several States,' an enforceable treaty could provide the governing domestic law on that issue."); José R. Coleman Tió, Six Puerto Rican Congressmen Go to Washington, 116 Yale L.J. 1389, 1394 (2007) ("Absent a clear constitutional intent to deny Congress the power to treat Puerto Rico as a state for purposes of representation in the House, the broad language of the Territorial Clause seems at least to provide a clearer source of power to enfranchise nonstate citizens than does the Seat of Government Clause [for D.C. residents]."). Hence, we think it plain that the Court's view on the merits of a claim to congressional representation (with voting power) for citizens residing in Washington, D.C. does not dictate the outcome of the claim brought here by citizens residing in the Commonwealth.

As noted above, the Supreme Court recently reaffirmed that we may not lightly reject constitutional claims brought under § 2284(a) as insubstantial based on a lack of subject-matter jurisdiction. See Shapiro, 136 S. Ct. at 455. Having necessarily concluded in Igartúa IV that at least some of plaintiffs' claims "clear[] Goosby's low bar" for substantiality, we see no basis for changing course now. Id. at 456. Accordingly, if § 2284(a)

governs, plaintiffs are entitled to a hearing before a three-judge court irrespective of our view as to the merits of those claims. See id. ("Perhaps petitioners will ultimately fail on the merits of their suit, but § 2284 entitles them to make their case before a three-judge district court.").

## III.

Appellant Igartúa has persisted in his pursuit of federal voting rights for the four million Puerto Rico residents who are United States citizens in the face of repeated rejection of his claims by this court. His objective is laudable. As one member of this panel emphasized in Igartúa IV, "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." 626 F.3d at 638 (Torruella, J., concurring in part and dissenting in part) (quoting Wesberry v. Sanders, 376 U.S. 1, 17 (1964)); see also id. at 606 ("The unequal distribution of the fundamental privilege of voting among different categories of citizens is deeply troubling." (Lipez, J., concurring in the judgment)).

In Igartúa IV, our court failed to appreciate the strength of plaintiffs' argument that their constitutionally based apportionment claims should be heard by a three-judge court. As the Supreme Court has made clear, the ultimate merit of those claims is not the question. Rather, the need to convene a three-

judge court turns on two issues: whether plaintiffs' claims are within the scope of § 2284(a) and whether they satisfy the minimum requirements of substantiality for subject-matter jurisdiction.

Our analysis above demonstrates that these issues deserve considerably more deliberation than we have previously given them. Thus, with the benefit of hindsight and the Supreme Court's renewed attention to the three-judge-court framework in Shapiro, we have come to believe that Igartúa's request for a three-judge court should be addressed by our court en banc, "with the best advocacy available in support of all parties." Igartúa IV, 626 F.3d at 612 (Lipez, J., concurring in the judgment). This is, inescapably, "a question of exceptional importance," Fed. R. App. P. 35(a)(2), that "fits squarely within the guidelines for en banc review," Igartúa IV, 626 F.3d at 612. Any request for such reconsideration should be granted without delay.

As a panel, however, bound by precedent, we must affirm the judgment of the district court.

So ordered.

**-Opinion Concurring in Part/Dissenting in Part Follows-**

- 24 -

**TORRUELLA**, <u>Circuit Judge</u> **(Concurring in part, Dissenting in part).** I wholeheartedly agree with the majority that Igartúa's claim challenging Congress's failure to include Puerto Rico within its apportionment of districts is an apportionment challenge covered by § 2284(a). I also agree that it satisfies the minimum requirements of substantiality for subject matter jurisdiction and, thus, a three-judge court should have been convened. Despite the excellent analysis provided by the majority in reaching these conclusions, I am unable to join their opinion because, unlike my colleagues, I do not believe this Court is bound by stare decisis on the three-judge issue.

The panel's treatment of the three-judge issue in <u>Igartúa IV</u> did not provide any reasoning or explain its conclusion, and was not among the case's enumerated holdings. Moreover, the footnote, consisting of just three sentences -- the first acknowledging only that the Government did not argue for a three-judge court; the second merely restating a portion of § 2284(a); and the third offering a vague eight-word rejection -- is the opinion's sole and complete discussion of that topic. Far from "considered," the footnote is cursory, a comment made merely in passing.

The utter lack of discussion and complete absence of analysis of the three-judge issue renders footnote 6 dicta. This Court has defined "obiter dictum" as "observations relevant, but

not essential, to the determination of the legal questions then before the court." Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992). In Arcam Pharm. Corp. v. Faría, this Court quoted Second Circuit Judge Pierre Leval's characterization of dictum as "an assertion in a court's opinion of a proposition of law which does not explain why the court's judgment goes in favor of the winner." 513 F.3d 1, 3 (1st Cir. 2007) (emphasis added) (quoting Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1256 (2006)). "[I]n evaluating dicta, '[m]uch depends on the character of the dictum. Mere obiter may be entitled to little weight, while a carefully considered statement . . . , though technically dictum, must carry great weight, and may even . . . be regarded as conclusive.'" McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991) (quoting Charles A. Wright, The Law of Federal Courts § 58, at 374 (4th ed. 1983)).

Considering the cursory treatment given to this issue by the Igartúa IV panel, our hands are not tied by stare decisis. See Montejo v. Louisiana, 556 U.S. 778, 793 (2009) (arguing that a relevant factor in stare decisis is "whether the decision was well reasoned"); Edelman v. Jordan, 415 U.S. 651, 670-71 (1974) (stating that the lack of substantive discussion of issues in an opinion carries the consequence that the opinion not be given "the same precedential value as would be [given to] an opinion of this

Court treating the question on the merits"); see also CBOCS W., Inc. v. Humphries, 553 U.S. 442, 468 (2008) (Thomas, J., dissenting) ("[T]he Court's one-paragraph discussion of the issue was, at best, both cursory and ambiguous. This is hardly the stuff of which stare decisis is made."); Payne v. Tennessee, 501 U.S. 808, 828 (1991) ("Stare decisis is not an inexorable command; rather, it 'is a principle of policy and not a mechanical formula of adherence to the latest decision.'" (quoting Helvering v. Hallock, 309 U.S. 106, 119 (1940))); Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 142 (1st Cir. 2000) ("[S]tare decisis is neither a straightjacket nor an immutable rule; it leaves room for courts to balance their respect for precedent against insights gleaned from new developments, and to make informed judgments as to whether earlier decisions retain preclusive force."); Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1549 (Fed. Cir. 1994) (overruled on other grounds) ("[W]e are unwilling to give stare decisis effect to a matter that we did not fully consider and that was not before us in the prior case.").

As the footnote is dicta and does not constitute stare decisis, neither this Court nor the district court can be bound by it, regardless of the similarities between Igartúa IV and Igartúa V. "Dicta -- as opposed to a court's holdings -- have no binding effect in subsequent proceedings in the same (or any other) case."

- 27 -

Municipality of San Juan v. Rullán, 318 F.3d 26, 28 n.3 (1st Cir. 2003) (emphasis added). "[D]ictum contained in an appellate court's opinion has no preclusive effect in subsequent proceedings in the same, or any other, case." Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992); see also Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) ("Dicta, of course, is not binding on future panels."). Rather, "[w]e are at liberty to correct the misunderstanding" and "[t]hose statements are not good law." United States v. Pérez-Ruiz, 353 F.3d 1, 10 (1st Cir. 2003). This Court has explicitly cautioned district courts against following dicta from the appellate court, even within the same case. See Dedham Water Co., 972 F.2d at 459 ("When, as here, the district court . . . proposed to act upon dicta contained in the appeals court's earlier opinion . . . it is especially important that we . . . hold the parties to the usual consequence of invited error."). "To do otherwise," Dedham warns, "would place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy." Id. (quoting Merchant v. Ruhle, 740 F.2d 86, 92 (1st Cir. 1984)).

Indeed, Igartúa IV's footnote is the kind of "'drive-by jurisdictional ruling' that the Supreme Court has instructed has 'no precedential effect.'" CE Design Ltd. v. Amer. Econ. Ins. Co., 755 F.3d 39, 46 (1st Cir. 2014) ("[T]he brief discussion in the Massachusetts [v. United States Veterans Admin., 541 F.2d 119

(1st Cir. 1976)] footnote is arguably the sort of 'drive-by jurisdictional ruling' that the Supreme Court has instructed has 'no precedential effect.'" (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91 (1998))).

Although the Supreme Court has not yet formally resolved whether convening a three-judge court under § 2284(a) is a jurisdictional requirement, it was jurisdictional before the statute was amended in 1976. As relevant here, those amendments changed the statute to require parties to request a three-judge panel rather than requiring judges to identify claims as falling under § 2284(a) upon their filing, but the amendments left intact the mandate that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a) (emphasis added). Thus, the three-judge requirement of § 2284 uses jurisdictional language, and nothing in the legislative history suggests any intention to change that determination to be otherwise. The Second, Fifth, and Sixth Circuits have held as much. Lulac of Texas v. Texas, 318 F. App'x 261, 264 (5th Cir. 2009) ("We agree with our sister circuits that the term 'shall' in § 2284 is mandatory and jurisdictional. Although the 1976 amendment to § 2284 reduced the categories of cases subject to the three-judge requirement, nothing in the legislative history suggests an intent to alter its jurisdictional

nature." (internal citations omitted)); Kalson v. Paterson, 542 F.3d 281, 287 (2d Cir. 2008) ("The text of 28 U.S.C. § 2284 uses typically jurisdictional language. . . . There is, moreover, no reason to think that when in 1976 Congress amended the three-judge statute, it intended to make this imperative nonjurisdictional. . . . [N]othing in the legislative history that describes the reasons for retaining the three-judge requirement in apportionment challenges suggests any change with respect to jurisdiction."); see also Armour v. Ohio, 925 F.2d 987, 989 (6th Cir. 1991) (en banc). Accordingly, the Igartúa IV footnote is a "drive-by jurisdictional ruling" with no precedential effect.[13]

For these reasons I do not believe Igartúa IV decided the three-judge issue. Judge Lipez's concurrence, as written, accepts only the judgment. 626 F.3d 592, 606 (1st Cir. 2010). I dissented in everything except the conclusion that the U.S. Constitution does not give Puerto Rico residents the right to vote

---

[13] By contrast, the Supreme Court's implicit jurisdictional decision in Adams v. Clinton, 531 U.S. 941 (2000), carries precedential value with respect to the validity of the three-judge panel because the threshold jurisdictional requirement for direct review by the Supreme Court was explicitly established by 28 U.S.C. § 1253 and spelled out by the Court in Norton v. Mathews, 427 U.S. 524 (1976) and Mobay Chem. Corp. v. Costle, 439 U.S. 320 (1979) (per curiam). Far from being a potential "drive-by jurisdictional ruling," the determination of jurisdiction in such cases, where the nature and importance of the jurisdictional question is clearly established by both stand-alone statute and precedent, is an "ignition" ruling -- the first, prerequisite step without which the Court could not proceed.

for members of the House of Representatives because Puerto Rico is not a state. Id. at 620-28. Accordingly, it seems that only one member of the panel (Judge Lynch) subscribed to footnote 6, which would be insufficient to constitute a holding of the Court and, instead, makes it nothing other than dicta. Because the footnote lacked the necessary support to become a determination of this Court, it does not bind this Court or any other court.

A mere footnote, bereft of reasoning or analysis, should not foreclose the voting rights of close to four million United States citizens. I would reverse the judgment of the district court refusing to convene a three-judge court and remand the case to that court for further proceedings consistent with all other aspects of the majority opinion.