TORRUELLA, Circuit Judge,
dissenting from the denial of rehearing en banc.
Although I fully join my dissenting colleagues’ elegant and on point statements, I write separately because their expressions regarding the majority’s denial of en banc review of the panel decision fall substantially short of what I consider to be an unwarranted and unjustifiable action that clearly runs contrary to the law.
At the heart of this controversy lies the total national disenfranchisement[2] and *26 lack of national political clout of the community of 3.5 million United States citizens who reside in Puerto Rico, a condition which has lasted for the 119 years of U.S. sovereignty over the people who inhabit this territory, and even more significantly, throughout the 100 years since they were granted citizenship in 1917.[3] This situation has, if anything deteriorated in recent times.[4] This regrettable condition calls upon this court to heed the apparently forgotten advice of the Supreme Court in United States v. Carolene Products Co., 304 U.S. 144, 152 n.4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), to the effect that “prejudice against discrete and insular minorities may be a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry.” Beyond the expressions of my dissenting colleagues, I am saddened, not only by this court’s negation of the advice of Carolene Products, but, in opposition to that tenet, as is clearly demonstrated in the denial of the present en banc proceeding, by its consistently shallow grounds in doing so.
In substance, Appellants claim that they are deprived of their constitutional right to vote for representatives in the United States House of Representatives by reason of Congress having failed to apportion congressional districts for Puerto Rico, and demand the convening of a three-judge district court pursuant to 28 U.S.C. § 2284. The Federal Rules of Appellate Procedure provide procedural relief designed to correct serious constitutional injuries of the type claimed by the insular minorities in question in this case.
Rule 35(a)(2) of the Federal Rules of Appellate Procedure establishes that an en banc court may be convened when “the proceeding involves a question of -exceptional importance.” Given our record of past en banc votes, it is difficult to discern in this circuit a principled rule as to what is considered a “question of exceptional importance.” Judging from the votes in the present case, as well as in past cases, one cannot even accurately describe the existence of a double, triple, or even quadruple standard of what this court considers a “question of exceptional importance.” The closest we can come to in predicting the granting or denial of such a procedure in this Circuit is that it appears to depend on the “eye of the beholder,” see Igartúa v. United States, 654 F.3d 99, 105 (1st Cir. 2011) (Torruella, J., dissenting), or stated with equal accuracy, that “we know it when we see it.” Just a few examples will suffice to illustrate the nomadic nature of our non-“exceptional importance” rule. In Igartúa-de la Rosa v. United States, 417 F.3d 145, 158 (1st Cir. 2005) (Torruella, J., dissenting), this court motu proprio convened an en banc court and proceeded to suppressed the original panel after the panel had held a rehearing and even be *27 fore it could issue its opinion.[5] In S.E.C. v. Tambone, we granted en banc to decide what it means “[t]o make any untrue statement of a material fact ... in connection with the purchase or sale of any security.” 597 F.3d 436, 438 (1st Cir. 2010) (en banc) (alterations in original). In United States v. Textron, we granted en banc to figure out “whether the attorney work product doctrine shields from an IRS summons ‘tax accrual work papers’ prepared by lawyers and others in a [corporation’s [t]ax [department to support [the corporation’s calculation of tax reserves for its audited corporate financial statements.” 577 F.3d 21, 22 (1st Cir. 2009) (en banc); see also Kolbe v. BAC Home Loans Servicing, LP, 738 F.3d 432, 474 (1st Cir. 2013) (Torruel-la, J. dissenting) (compiling cases demonstrating the First Circuit’s ambivalence when granting and denying en banc review).
In contrast, the present request for en banc review raises a question of “exceptional importance” because:
(1) The panel that decided this case affirmed the denial by the district court of the convening of a three-judge district court because it found itself bound by “the brief, yet controlling, footnote in [Igartúa v. United States, 626 F.3d 592, 598 n.6 (1st Cir. 2010) (“Igartúa IV”) ] rejecting the call for a three-judge court.”[6] Igartúa v. Obama, 842 F.3d 149, 151 (1st Cir. 2016). It nevertheless unequivocally stated “we emphasize that we now doubt the correctness of [that] brief, yet controlling, footnote” and, “[al]though we as a panel must follow Igartúa IY, the three-judge-court issue is one of substantial importance that should be reconsidered by the full court in an en banc rehearing of this case.”[7] Thus, an issue which was “not ... in [that] case” was decided in a summary, passing manner. Igartúa IV, 626 F.3d at 598 n.6. It now clearly deserves consideration by the full court because it fundamentally affects the constitutional rights of several million citizens, a quintessential question of “exceptional importance.”
(2) With respect, both the district court and the members of this court who have voted against en banc review have committed a fundamental error of law in considering the possible ultimate outcome of the underlying question raised by Appellants’ petition as a deciding factor in whether a three-judge district court should be convened. The focus in deciding this question should have been whether Appellants’ constitutional claims are “wholly insubstantial.” Vazza v. Campbell, 520 F.2d 848, 849 (1st Cir. 1975). Id. (“Since no three-judge court was convened, we can affirm the dismissal of the action only if appellant’s constitutional claims are ‘wholly insubstantial.’ ” (quoting Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973))).
In Igartúa IV, the court decided in a conclusory footnote that the case did not have to be heard by a three-judge court, but failed to consider the issues that actually determine whether a three-judge court must be convened: (1) whether 28 U.S.C. § 2284(a) in fact covered the type of claim *28 raised by Igartúa, and (2) whether there was a “substantial federal question,” Shapiro v. McManus, — U.S. -, 136 S.Ct. 450, 455, 193 L.Ed.2d 279 (2015). In its opposition to en banc, the government fails to address precedents discussed at length in the majority opinion regarding these two issues and dismisses Adams v. Clinton, 90 F.Supp.2d 35, 72 (D.D.C.), aff'd, 531 U.S. 941, 121 S.Ct. 336, 148 L.Ed.2d 270 (2000), in a footnote, arguing, in essence that the District of Columbia and the Commonwealth of Puerto Rico are distinct.
In Adams, residents of the District of Columbia challenged their exclusion by Congress from apportionment to a congressional district. Adams v. Clinton, 26 F.Supp.2d 156, 157-58 (D.D.C. 1998). The district judge concluded that plaintiffs’ no-napportionment claims were covered by § 2284(a), and convened a three-judge panel, id. at 161, which ultimately dismissed the case on the merits. Adams, 90 F.Supp.2d at 72 (three-judge panel). On direct appeal, the parties squarely raised the jurisdictional issue before the Supreme Court. The Court affirmed the judgment of the three-judge district court without explanation, 531 U.S. at 941, 121 S.Ct. 336, thus implying that the three-judge court had been properly convened for the nonap-portionment claim. The government’s attempt to dismiss the significance of Adams by merely arguing in a footnote that the District of Columbia and the Commonwealth of Puerto Rico are meaningfully distinct in both history and character is a red herring. Any difference to this effect has no relevance to the Supreme Court’s implied reasoning that a claim of nonap-portionment is,- in essence, a challenge to the apportionment of a congressional district) which requires that a three-judge court be convened. And that is the legal question at issue here: whether -a three-judge court must have been convened for Appellants’ nonapportionment claims.
The government further argues that Appellants’ constitutional claims are not “jus-ticiable” because “[n]o court can require a constitutional amendment, order that Puerto Rico be admitted into the Union as a state, or enjoin Congress to enact new legislation.” Although the government uses the term “justiciable,” its argument is actually that the complaint fails to state a claim for which relief can be granted. Failure to state a claim upon which relief may be granted, however, is not the proper standard. Rather,, as previously indicated, we need to focus on whether Appellants’ constitutional claims are “wholly insubstantial.” Vazza, 520 F.2d at 849. Thus, it is not enough that the government and some members of this court might consider the claim to be without merit. Shapiro, 136 S.Ct. at 456 (“Perhaps petitioners will ultimately fail on the merits of their suit, but § 2284 entitles them to make their case before a three-judge district court.”). Because the substantiality threshold is not a test of whether the allegations in the complaint state a claim for relief on the merits and, as discussed in the majority opinion, Appellants’ claims are not “wholly insubstantial,” the government’s response is unpersuasive.
The members of this court who have voted against en banc review reject on the merits the panel’s suggestion that a constitutional claim may arise from the government’s failure to abide by the obligations imposed by the International Covenant on Civil and Political Rights (“ICCPR”). A majority of the en banc court, if convened, might ultimately agree with that assessment. But the court should not be deciding the issue without thorough briefing and full deliberation.
Indeed, dismissing the treaty argument on the ground that it merely identifies a conflict between two. legislative enact- *29 merits ignores the unique status of treaties as a source of federal law. Treaties are not garden-variety statutory enactments, see U.S. Const., Art. II, § 2 (giving the President power “to make Treaties, provided two thirds of the Senators present concur”), and their status under the Supremacy Clause means they can override inconsistent legislation, see, e.g., Julian G. Ku, Treaties as Laws: A Defense of the Last-in-Time Rule for Treaties and Federal Statutes, 80 Ind. L.J. 319, 322 (2005) (noting that some scholars “believe that treaties' have domestic effect superseding inconsistent domestic law”); id. at 334-35 (noting that “when conflict occurs between a treaty and a federal statute, the courts apply the last-in-time rule, which holds that ‘a treaty may supersede a prior act of Congress and an act of Congress may supersede a prior treaty1 ” (quoting Cherokee Tobacco, 78 U.S. (11 Wall.) 616, 621, 20 L.Ed. 227 (1871)); but see Vasan Kesavan, The Three Tiers of Federal Law, 100 Nw. U.L. Rev. 1479, 1633 (2006) (rejecting the first-in-time rule as unconstitutional and concluding that “[t]he Constitution establishes three tiers of federal law,” with statutes superior to treaties). Hence, if Congress is obliged by the ICCPR to provide all citizens an equal right to vote — and assuming no other constitutional provision bars that action— Congress arguably would have to re-do the current apportionment of representatives to include citizens residing in Puerto Rico within an apportionment plan. That scenario does not present a conflict between two laws of equal stature. A binding treaty that broadens the objectives of congressional apportionment would necessarily trigger revision of an inconsistent mathematical formula for apportionment.
While this view of the United States’ treaty commitments may be debatable, the majority of the active judges are unwilling even to engage on the complex questions raised here. Their rationale for rejecting deliberation — that, at most, we have a run-of-the-mill statutory conflict — is to choose one framing of the argument over another. There is no doubt that the three-judge-court issue was decided in a cursory manner without any reasoning or explanation in Igartúa IV. A bereft footnote should not be our “binding precedent” for such an important issue of law. An en banc court should be convened so that we can give the issue due consideration after additional briefing by the parties.[8]
In sum, this case presents important issues at the very heart of what it means to be a democracy. They deserve consideration by our full court and certainly greater deliberation than they were given in a footnote about an issue that was not before us. A report by the Senate Judiciary Committee regarding the amendment of the Three-Judge Court Act stresses that challenges to apportionment issues “are of such importance 'that they ought to be heard by a three-judge court.” S. Rep. No. 94-204, at 9 (1975). This further reinforces that this case presents a question of exceptional importance that warrants en banc review. Because the majority of this court thinks otherwise, I respectfully dissent.
LIPEZ, Circuit Judge.
I write to record my disappointment that a majority of the active judges of this court have refused to allow en banc review of appellant’s contention that a three-judge court should have been convened to decide *30 in the first instance whether United States citizens who reside in Puerto Rico have a constitutional right to vote in certain federal elections. Bound by prior precedent, the panel had no choice but to reject that contention, and we thus upheld the dismissal of the complaint. See Igartúa v. Obama, 842 F.3d 149, 151 (1st Cir. 2016) (“Igartúa V”). We emphasized, however, that our decision “should not properly, or fairly, be the end of the case.” Id. at 152. We urged our colleagues to grant any forthcoming request for en banc review “without delay.” Id. at 160.
I will not repeat here the reasoning that led the panel to question our court’s prior cursory holding that the three-judge-court statute does not cover the right-to-vote claim that appellant asserts. See id. at 153-59. It suffices to say that the issue is complex, our precedent does not seriously address it, and the right ultimately at stake — “the fundamental privilege of voting,” Igartúa v. United States (“Igartúa IV”), 626 F.3d 592, 610 (1st Cir. 2010) (Lipez, J., concurring in the judgment) — is undeniably of “exceptional importance.” Fed. R. App. P. 35(a)(2). There could be no more compelling circumstances for en banc review. The certainty of our colleagues that the petition for en banc review does not raise a constitutional issue within the meaning of the three-judge-court statute is premature. Assisted by the comprehensive briefing that would accompany such review, we would be better positioned to consider the applicable law and achieve the correct outcome. I am deeply disappointed by my colleagues’ failure to acknowledge that the issues presented here are worthy of this court’s thorough deliberation and fully articulated analysis.

. In 2012, 61% of the People of Puerto Rico voted in favor of joining the Union as a state, a result which was ignored by Congress. See OPCIONES NO TERRITORIALES, Elec-ciones Generales 2012 y- Consulta sobre el Estatus Político de Puerto Rico (Nov. 16, 2012, 9:59 PM), http://64.185.222.1-82/ REYDI_NocheDelEventol2/index.html#es/ ' default/OPCIONES_NO_TERRITORIALES- *26 ISLA.xml. On June 11, 2017, a referendum reaffirmed this outcome with a 97% vote in favor of statehood. See CONSULTA DE ES-TATUS, Plebiscito para la Descolonización In-mediata de Puerto Rico (June 14, 2017, 3:43 PM), http://resultados2017.ceepur.org/Noche_ del_Evento_78/index.html#es/defaull/ CONSULTA_DESCOLONIZACION_Resumen. xml. Unfortunately, given the Realpolitik of the present situation in the National center of power, these results are most likely to be "dead on arrival.”

. Jones-Shafroth Act, Pub. L. No. 64-368, 39 Stat. 951 (1917).

. See Puerto Rico v. Sánchez Valle, — U.S. -, 136 S.Ct. 1863, 195 L.Ed.2d 179 (2016); Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA”), 48 U.S.C. §§ 2101-2241.

. See also Igartúa de la Rosa v. U.S., 407 F.3d 30 (1st Cir. 2005).

. That footnote states in its entirety: "We also reject the argument made by Igartúa, but not made by the government, that this case must be heard by a three-judge district court under 28 U.S.C. § 2284(a). That statute provides that a district court of three judges shall be convened when ,., an action is filed challenging the constitutionality of the apportionment of congressional districts. That is not the issue in this case.” (alteration in original) (emphasis added) (citation and quotations omitted). Igartúa IV, 626 F.3d at 598 n.6.

.Igartúa v. Obama, 842 F.3d 149, 151 (1st Cir. 2016).

. There are no logistical reasons for why an en banc court should not be convoked. This court last had an en banc in January 2015 and before that it had only two since 2012. Our statistics show fewer and fewer cases are being heard, a trend that has been going on for some time. We are hardly overworked.